Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of NINA M. HOFFMAN, Respondent, for Compensation under the Workmen's Compensation Law, for Herself and Infant Son, on Account of the Death of Her Husband, PETER W. HOFFMAN, *v.* THE PIERCE-ARROW MOTOR CAR COMPANY, Employer, and THE EMPLOYERS' MUTUAL INSURANCE COMPANY OF NEW YORK, Insurance Carrier, Appellants.

Third Department, July 8, 1920.

**Workmen's Compensation Law — operation for hernia received in course of employment — death due to removal of appendix at same time but independent of other operation — evidence not establishing death from accidental injury.**

The deceased employee received a double hernia while in the course of his employment, and in an operation for the hernia his appendix was removed at his request, though it was not necessary in the operation for the hernia, and thereafter peritonitis developed causing decedent's death.

*Held,* that the operation upon the appendix was not made necessary by the accident, and as the only medical testimony given, tracing the peritonitis and death back to the operation, impliedly gives the appendix operation as the cause, it follows that the death was not shown to have resulted from an accidental injury occurring in the course of the employment.

JOHN M. KELLOGG, P. J., dissents.

APPEAL by the defendants, The Pierce-Arrow Motor Car Company and another, from a decision and award of the State Industrial Commission, entered in the office of said Commission on the 20th day of October, 1919.

*Dudley, Stowe & Sawyer [Ansley W. Sawyer* of counsel], for the appellants.

*Charles D. Newton, Attorney-General [E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

H. T. KELLOGG, J.:

The deceased employee for whose death this award was made sustained a double hernia while assisting three other workmen in lifting the body of an automobile for his employer, the Pierce-Arrow Motor Car Company. Within a few days he was operated upon for hernia by two surgeons named Reagan and Pinkerton, the former operating for the hernia on the left-hand side of the abdomen, and the latter for the hernia on the right-hand side. When the incision was made upon the right-hand side the appendix appeared in the opening and was removed by Pinkerton with the consent of Reagan. The patient remained in the hospital for about ten days, during which period he made favorable progress towards recovery. At the end of that period he insisted upon going home, which course, although not approved by the hospital authorities, was permitted by them. Reagan says that when he came home the deceased was running a temperature; that he had abdominal tenderness and distention; that he was placed in bed where he remained for about two weeks. He was then returned to the hospital, and within a few hours after his arrival died from a disorder diagnosed as peritonitis by both physicians. An autopsy was thereafter performed by Dr. Williams and Dr. Bentz of the city of Buffalo, who were characterized by Reagan as " noted physicians." Reagan testified concerning his observations made at the autopsy that the two operative wounds were free from infection, had fully healed, and were clean wounds. He also said that the body of the deceased " was just full of abscesses all over, all over the abdominal cavity," and that " from my observation, all this trouble started around the appendix." Reagan did not venture the opinion that the peritonitis resulted from the operations, except as it may be inferred from the testimony quoted that it was his view that the operation upon the appendix was the cause. His testimony may have been animated by the desire to throw the blame exclusively upon

Pinkerton who removed the appendix. Pinkerton testified that when the deceased left the hospital there had been no steady rise in temperature, no rapid pulse, nor distention of the abdomen; that all these indications of peritonitis would have appeared within seventy-two hours if the operation had been the cause; that all the operative wounds were smooth and clean; that the stump of the appendix was normal; that no infection causing peritonitis resulted from the operations. It was his opinion that the peritonitis came from the bursting of pus sacs, the presence of which in the abdomen was due to disconnected causes. Concerning the operation for the removal of the appendix, Pinkerton testified he had been requested by the deceased to remove it while operating for the hernia. He was corroborated in this statement by two nurses, one of whom testified that before the operation Pinkerton said that he had been requested by the deceased to remove his appendix, and the other that after the operation the deceased said that his appendix had been removed and that he had wanted it done. It is clear that the operation upon the appendix was not made necessary by the accident which caused the hernia. As the only medical testimony given tracing the peritonitis and death back to the operations is that of Reagan who impliedly gives the appendix operation as the cause, it follows that the death was not shown to have resulted from an accidental injury occurring in the course of the employment. It is a significant fact that the two noted physicians who performed the autopsy were not called, so that the only medical testimony appearing in the record was given by surgeons interested in absolving themselves from blame. In view of this fact it appears to us that the just course to follow is not to dismiss the claim, but to return it to the Commission for further proof as to the causal relation between the accidental injury and the death.

The award should be reversed and the case remitted to the Commission for further proof.

All concur, except JOHN M. KELLOGG, P. J., who votes for affirmance.

Award reversed and matter remitted to the Commission for further proof.